Staples, J.,
delivered the opinion of the court. .
The court is of opinion that the decree of the circuit court rendered at the August term, 1875, is founded upon a misconception of the meaning and effect of the answer of Isaiah A. Welch, administrator de bonis non with the will annexed of James R. Kent’s estate. That answer is not an unqualified admission of assets in the hands of the administrator sufficient to discharge all the liabilities of the estate, but an admission that certain assets then in litigation when collected would be sufficient for that purpose. This is rendered very clear by a statement at the foot of the answer, made by complainant’s counsel, to the effect that the assets referred to in it are the same as mentioned in the commissioner’s report of 31st March, 1875, and filed in the cause. A reference to that report will show that the administrator stated to the commissioner there were no assets in his hands, but that there was due .the estate about $23,000, $18,000 of which was then in litigation, $4,000 of bonds *559 upon sales of lands in West Virginia, and the remaining §8,000 a debt upon the .Blacksburg Savings Bank. The administrator stated he did not know when any of these sums would be realized, and the commissioner -was unable to form any reliable opinion on the subject. This statement, thus carefully guarded, the circuit court treated as an unqualified admission of personal assets sufficient to pay all the debts of the testator, and upon it rendered a decree for the whole amount of complainant’s debt, being about §3,000, against the administrator, to be paid out of the assets in his hands to be administered; and in default of such payment leave was given to sue out execution. It does not materially concern us to enquire whether this is a decree de bonis propriis or de bonis testatoris. Conceding that it is of the latter description, the complainants may sue out execution, and upon a return of nulla bona, the complainants may institute an action for a devastavit upon the administration bond against the administrator and his sureties, and recover the full amount of the decree. Bush v. Beale, 1 Gratt. 229. And thus it is, the administrator and his sureties are to he held liable for the debts of the testator upon a supposed admission of assets, when no such admission was made, and when it plainly appears that the assets have not been collected, without default on the part of the administrator, and, indeed, never may be collected.
The decree of the circuit court is therefore clearly erroneous and must be reversed and annulled. And this court, upon such reversal, might now render such decree as is warranted by the answer, or remand the cause for further proceedings, were it not for a greater difficulty lying at the very foundation of the suit itself. A brief statement will show what this is.
It appears that some time prior to 1870, a general creditors’ bill was brought in the county court of Montgomery, and afterwards removed to the circuit court, *560 against- the personal representative, legatees and devisees of James E. Kent’s estate, the object of which was to settle the administration accounts, ascertain the indebtedness of the estate, and to obtain a sale of real estate in the hands of. devisees to meet an alleged deficiency of personal assets. In the progress of this suit accounts have been taken from time to time, showing' the condition of the estate, the amount of assets, collected and uncollected, and the claims of creditors. This suit was pending in the year 1874, and there is every reason to believe it is still pending.
The present bill was filed in October, 1878, in the circuit court of Pulaski, by complainant, a judgment creditor of James E. Kent’s estate, against the administrator with thé will annexed and legatees and devisees of said estate. Complainant alleges that his counsel ■made an examination of the papers in the Montgomery suit, and advised complainant that the condition of that cause and the complications connected with it, precluded the .hope of his realizing anything but trouble and expense for years to come by becoming a party to it. He thereupon determined to proceed with his own suit, and if required to do so, to pay the costs of the same himself sooner than jeopardize his claim or indefinitely postpone its collection by making himself a party to a cause which, after years spent in its prosecution, has yielded the plaintiff nothing but disappointment. At the March term, 1874, the defendants demurred to the bill, but the' court overruled the demurrer and directed one of its' commissioners to settle the administrator’s accounts, and to report the value, location and quantity of the lands of which the testator died possessed. The commissioner made a partial settlement and report, based entirely upon papers and vouchers in the hands of the commissioner acting under the decrees of the circuit court of Montgomery, to which reference has already been made. *561 This report was returned to the August term, 1874, at which time one of the devisees filed his answer. He insisted that the personal assets were sufficient to pay all the debts of the estate, but had not been collected by the administrator; and he explained the difficulties in the wray of the collection. He insisted that the circuit court of Montgomery had taken complete jurisdiction of the assets and the administration of the estate, and he denied there were any such difficulties or complications in that suit as precluded complainant from obtaining complete relief there.
Hpon the coming in of this answer the court directed the commissioner to ascertain and report the amount of assets then in the hands of the administrator or to be collected; of what they consisted; whether they could be realized in a reasonable time, and the probable time required for their collection. Pursuant to this decree the commissioner made the report alluded to in the outset of this opinion, and he also reported the amount necessary to be paid by each devisee to meet the claims of creditors in this suit. After this report was filed the administrator, having returned to the state, filed his answer, and upon that answer, complainant abandoning apparently his remedy against the devisees, took the decree against the administrator, which has been already considered.
. This brief statement will show the justice and wisdom of the rale which declares upon a decree for an account that the claims of all the creditors must be brought in under that decree; that such a decree operates as a suspension of all other suits, and is treated as a decree in favor of all the creditors. Stephenson v. Taverners, 9 Gratt. 398.
The complainant does not explain the character of the complications which interfered with his remedies in the Montgomery suit. In the nature of things there could *562 be none which would not equally affect any other suit involving a settlement of the whole estate. It is very probable the delay in the Montgomery suit was due in part to the want of proper diligence, and in part to the difficulties attending the collection of debts due the estate. If the complainant was dissatisfied with this delay he might have applied for leave to prosecute .the suit in his own name, and if necessary to file a supplemental bill. Hallett v. Hallett, 2 Paige’s R. 21, and cases there cited. If the circuit court of Montgomery erred in not decreeing a sale of the real estate to satisfy the claims of creditors, the remedy was in an appeal to a higher court. If the complainant may file an independent bill every other creditor may do the same in any county where any of the devisees may reside. Learned counsel seem to suppose it is a mere question of costs, which his client is willing to pay rather than be involved in the complications of the Montgomery suit. This is a misapprehension. The expense of several suits by different creditors is of course a matter for consideration, but it is not the chief consideration. When a decree for an account upon a creditor’s bill is rendered it operates as a judgment in behalf of all the creditors. The court thereby takes control of the assets, and administers them under its own immediate supervision. The entire administration of the estate is drawn into that court. The same result follows when the heir or devisee is made a party with a view to the sale of the real estate. The court decrees the sale, takes control of the fund, and administers it in the interest of all concerned.
The practical effect of a bill by a separate creditor in another court, after a decree for 'an account in the first, is to oust the jurisdiction of the latter court of its administration of the assets. But this is not all; the proceeding is open to all the objections of a useless multiplicity of suits, and to all the difficulties consequent *563 upon different decrees and different reports which, if conducted by different counsel and different commissioners, may vary in their principles and their results. Kettle & wife v. Craig, 1 Paige’s R. 416, in note.
In the present case the most that can be done would be to give complainant a decree for his debt to be paid out of the assets as they are collected. But it is obvious in this way he would obtain an advantage over the creditors in the Montgomery suit, if the personal assets prove insufficient to satisfy all the claims of creditors. If it be said he may at least obtain a pro rata share, the question arises, how is the Pulaski court to determine what is a pro rata share, without having all the creditoi’S before it, and thus in effect assuming the very jurisdiction already attached to the Montgomery court ?
The circuit court of Montgomery, in ignorance of the Pulaski suit, and of the claims asserted there, may make decrees and orders of distribution wholly inconsistent with the proceedings and orders in the Pulaski suit.
It is very manifest, however, that the complainant was not looking so much to the personal assets, which he regarded as unavailing, as to the real estate in the hands of the devisees. But surely the Montgomery court, which had before it all the creditors except complainant, was the proper tribunal to determine whether the condition of the estate and the interests of creditors required a sale. If. both courts decreed sales, it is easy to see the conflict and confusion resulting from different commissioners and different sales, as well as the inconvenience and expense to the devisees.
It is, however, unnecessary to dwell longer upon the evils necessarily flowing from two administrations of the same estate in different courts, at the suit of different creditors. That the Pulaski court erred in decreeing an account in this case does not admit of serious question. That court ought to have dismissed the bill upon the *564 demurrer, because it showed that complainant was fully-apprised of the proceedings in the Montgomery circuit court, and he gave no sufficient excuse for not applying to that court for relief. No possible good could be effected in retaining complainant’s bill for any purpose, as his only remedy was in the suit in the Montgomery court.
For these reasons the decree must be reversed, and the bill dismissed.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the argument of counsel, is of the opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous; therefore it is decreed and ordered, that the said decree of the said circuit court be reversed and annulled, and that the appellant recover of the appellee, David C. Kent, administrator of Gordon Oloyd, deceased, his costs by him in this hehalf expended, to be paid by the said administrator of Gordon Cloyd, deceased, out of the goods and chattels of his intestate in his hands to be administered. And the court now proceeding to render such decree in the premises as the said circuit court ought to have rendered, it is further ordered and decreed that the bill of the said David O. Kent, administrator as aforesaid, be dismissed and that the defendants therein recover against the plaintiff therein, their costs by them about their defence of said bill expended, to be paid out of the goods and chattels of his intestate in his hands to be administered ; which is ordered to be certified to the said circuit court of Pulaski county.
Decree reversed.